# Exhibit B

## TWG BRECKENRIDGE, LP
## AGREEMENT OF LIMITED PARTNERSHIP

### ARTICLE I.

### Formation of Limited Partnership; Name; Principal Place of Business

Section 1.1. Formation. Breckenridge GP, LLC, an Indiana limited liability company (the "General Partner"), as general partner, and TWG GP III, LLC (the "Limited Partner"), as limited partner, do hereby form a limited partnership (the "Partnership") under the Indiana Revised Uniform Limited Partnership Act. Certain defined terms used in this Agreement are set forth in Schedule I (Schedule of Definitions) attached hereto and made a part hereof.

Section 1.2. Name. The Partnership shall be conducted under the name of TWG Breckenridge, LP or such other name as the General Partner shall hereafter designate by written notice to the Limited Partner.

Section 1.3. Offices and Principal Place of Business. The offices and principal place of business of the Partnership shall be 1301 E. Washington St., Ste. 100, Indianapolis, Indiana 46202, unless changed to such other place as the General Partner may from time to time designate by written notice to the Limited Partner.

Section 1.4. Agent for Service of Process. The agent for service of process for the Partnership shall be CT Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204, or any successor at any different address as appointed by the General Partner.

### ARTICLE II.

### Purpose of the Partnership

The purpose of the Partnership is to acquire, construct, own and operate a residential rental property and to do all things reasonably incident thereto.

### ARTICLE III.

### Term of the Partnership

The Partnership shall commence with the filing of the Certificate of Limited Partnership with the Indiana Secretary of State and shall continue until February 15, 2119, unless dissolved sooner by law or as provided hereafter.

## ARTICLE IV.

### Partners

Section 4.1. <u>Names, Addresses and Capital Accounts of Partners</u>. The Partners, their respective addresses, their respective Capital Accounts and their respective ownership interests in the Partnership ("Percentage Interest") are set forth on <u>Exhibit A</u> attached hereto and made a part hereof.

Section 4.2. <u>Partner Loans; Capital Accounts; Withdrawal</u>. Loans by any Partner to the Partnership shall not be considered contributions to the capital of the Partnership. No Partner shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Partnership, except as provided herein; nor shall any Partner be required to make any additional Capital Contribution to the Partnership. No interest shall be paid on any capital contributed to the Partnership.

Section 4.3. <u>Limitation on Liability</u>. The Limited Partner shall not be liable for any of the debts of the Partnership, except as provided by law. The Limited Partner shall not be required to loan any funds to the Partnership. The General Partner shall have no personal liability for the repayment of the Capital Contribution of the Limited Partner. No Limited Partner shall be required to make any contribution to the Partnership by reason of any negative balance in such Limited Partner's Capital Account, nor shall any negative balance in a Partner's Capital Account create any liability on the part of the Partner to any third party.

Section 4.4. <u>Admission of Additional Limited Partners</u>. In order to obtain additional funds, the General Partner may admit to the Partnership additional limited partner(s) who will participate in the profits, losses, available cash flow and ownership of the assets of the Partnership on such terms as are determined by the General Partner. Admission of such additional limited partner(s) may result in a reduction of the interests of the Limited Partner.

## ARTICLE V.

### Accounting and Records

Section 5.1. <u>Records and Accounting</u>. The books and records of the Partnership shall be kept, and the financial position and the results of its operations recorded, on a basis and in accordance with the accounting methods followed for federal income tax purposes or determined by the Tax Matters Partner. The books and records of the Partnership shall reflect all Partnership transactions and shall be appropriate and adequate for the Partnership's business. The fiscal year of the Partnership for financial reporting and for federal income tax purposes shall be the calendar year.

Section 5.2. <u>Access to Accounting Records</u>. All books and records of the Partnership shall be maintained at the offices of the Partnership or at the Partnership's principal place of

business, and the Limited Partner shall have access to them at the offices of the Partnership and the right to inspect and copy them at reasonable times.

Section 5.3. Annual and Tax Information. The General Partner shall use all reasonable efforts to deliver to each Partner (a) within 90 days after the end of each fiscal year all information necessary for the preparation of each Partner's federal income tax return; and (b) within 120 days after the end of each fiscal year a financial report of the Partnership for such fiscal year, containing a balance sheet as of the last day of the year then ended, an income statement for the year then ended, a statement of sources and applications of funds, a statement of reconciliation of the capital accounts of the Partners, and a report of the activities of the Partnership during the period covered by the report.

Section 5.4. Accounting Decisions. All decisions as to accounting matters, except as otherwise specifically set forth herein, shall be made by the General Partner. The General Partner may rely upon the advice of its accountants as to whether such decisions are in accordance with accounting methods followed for federal income tax purposes.

Section 5.5. Tax Matters Partner and Partnership Representative. For the purposes of Subchapter C of Chapter 63 of the Code, the General Partner shall serve as the "Tax Matters Partner" of the Partnership and, as such, shall have all of the rights and obligations given to a Tax Matters Partner under said Subchapter. The Tax Matters Partner shall constitute the "partnership representative" under Section 6223 of Chapter 63 of the Code (as in effect pursuant to the Bipartisan Budget Act of 2015 (the "2015 Act"). In addition, in the event of any final partnership adjustment occurring under the procedures of the 2015 Act, unless the consent of the Limited Partner is obtained for doing otherwise, the Partnership shall timely elect to utilize the alternative procedure described in Section 6226 of the Code (as modified by the 2015 Act), and the partnership representative shall provide the Internal Revenue Service and each affected Partner with such information as required by such Section 6226 and any Treasury Regulations promulgated thereunder. Each Partner agrees to cooperate with the Partnership in utilizing the procedures under Section 6226 of the Code, whether or not such person is a Partner at the time of a final partnership adjustment. The General Partner's designation as the Tax Matters Partner and the Partnership Representative shall include the General Partner serving in such capacity after the termination of the Partnership with respect to IRS audits and proceedings. Notwithstanding anything to the contrary contained herein, the General Partner, in its capacity as the Tax Matters Partner and the Partnership Representative, shall not take any of the following actions, without first obtaining the consent of the Limited Partner:

(a) Extend the statute of limitations for assessing or computing any tax liability against the Partnership (or the amount or character of any Partnership tax item);

(b) Settle any audit with the IRS concerning the adjustment or readjustment of any Partnership tax item;

(c) File a request for an administrative adjustment with the IRS at any time or file a petition for judicial review with respect to any IRS adjustment;

(d) Initiate or settle any judicial review or action concerning the amount or character of any Partnership tax item;

(e) Intervene in any action brought by any other Partner for judicial review of a final adjustment of any Partnership tax item;

(f) Elect any depreciation schedule other than 30 years for the buildings comprising the Project; or

(g) Take any other action that would have the effect of finally resolving a tax matter affecting the rights of the Partnership and its Partners.

The General Partner shall keep the Limited Partner advised of any dispute the Partnership may have with any federal, state or local taxing authority and shall afford the Limited Partner the right to participate directly in negotiations with any such taxing authority in an effort to resolve any such dispute.

The Tax Matters Partner and the Partnership Representative shall obtain the consent of the Limited Partner before taking any of the actions specified in this Section 5.4, regardless of whether the Partnership has been dissolved or one or more of the Limited Partners has withdrawn from the Partnership, voluntarily or involuntarily, if the result of such actions would adversely affect the Limited Partner..

Section 5.6. Federal Income Tax Elections. The General Partner of the Partnership may make all elections for federal income tax purposes, including the following:

(a) To the extent permitted by applicable law and regulations, elect to use an accelerated depreciation method on each depreciable unit of the assets of the Partnership.

(b) In case of a transfer of all or part of the Partnership interest of any Partner, the Partnership may elect, pursuant to Section 734, 743 and 754 of the Code (or corresponding provision of future law), to adjust the basis of the assets of the Partnership.

ARTICLE VI.

Allocations and Distributions

Section 6.1. Allocation of Net Income, Net Loss or Capital Gains. Except as may be expressly provided otherwise in this Article VI, and subject to the provisions of Sections 704(b) and 704(c) of the Code, Capital Account Profits and Capital Account Losses for each fiscal year of the Partnership shall be allocated to the Partners, pro rata in accordance with their respective Percentage Interests.

Section 6.2. Special Allocations. The following special allocations shall be made in the following order:

(a) Minimum Gain Chargeback. Except as otherwise provided in Treasury Regulation Section 1.704-2(f), notwithstanding any other provision of this Article VI, if there is a net decrease in Partnership Minimum Gain during any fiscal year, each Partner shall be specially allocated items of Partnership income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum

Gain, determined in accordance with Treasury Regulation Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulation Sections 1.704-2(f)(6) and 1.704-2(j)(2). This Section 6.2(a) is intended to comply with the minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)   Partner Nonrecourse Debt Minimum Gain Chargeback. Except as otherwise provided in Treasury Regulation Section 1.704-2(i)(4), notwithstanding any other provision of this Article VI, if there is a net decrease in Partner Nonrecourse Debt Minimum Gain attributable to a Partner Nonrecourse Debt during any fiscal year, each Partner who has a share of the Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Treasury Regulation Section 1.704-2(i)(5), shall be specifically allocated items of Partnership income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to such Partner's share of the net decrease in Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Treasury Regulation Section 1.704-2(i)(4). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulation Sections 1.704-2(i)(4) and 1.704-2(j)(2). This Section 6.2(b) is intended to comply with the partner nonrecourse debt minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)   Qualified Income Offset. In the event any Partner unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5) or 1.704-1(b)(2)(ii)(d)(6), items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Adjusted Capital Account Deficit of such Partner as quickly as possible, provided that an allocation pursuant to this Section 6.2(c) shall be made only if and to the extent that such Partner would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article VI have been tentatively made as if this Section 6.2(c) were not in the Agreement.

(d)   Gross Income Allocation. In the event any Partner has a deficit Capital Account at the end of any fiscal year which is in excess of the sum of (i) the amount such Partner is obligated to restore pursuant to any provision of this Agreement, and (ii) the amount such Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulation Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Partner shall be specially allocated items of Partnership income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 6.2(d) shall be made only if and to the extent that such Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article VI have been made as if Section 6.2(c) hereof and this Section 6.2(d) were not in the Agreement.

(e)   Nonrecourse Deductions. Nonrecourse Deductions for any fiscal year shall be specifically allocated among the Partners in proportion to their Percentage Interests.

(f)   Partner Nonrecourse Deductions. Any Partner Nonrecourse Deductions for any

- 5 -

fiscal year shall be specially allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Treasury Regulation Section 1.704-2(i)(1).

(g) Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) or Section 743(b) of the Code is required pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(m)(2) or 1.704-1(b)(2)(iv)(m)(4) to be taken into account in determining Capital Accounts as the result of a distribution to a Partner in complete liquidation of the Partner's Interest in the Partnership, the amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Partners in accordance with their Interests in the Partnership in the event Treasury Regulation Section 1.704(b)(2)(iv)(m)(2) applies, or to the Partner to whom such distribution was made in the event Treasury Regulation Section 1.704-1(b)(2)(iv)(m)(4) applies.

Section 6.3. Curative Allocations. The allocations set forth in Sections 6.2(a) through 6.2(f) hereof (the "Regulatory Allocations") are intended to comply with certain requirements of the Treasury Regulations. It is the intent of the Partners that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Partnership income, gain, loss or deduction pursuant to this Section 6.3. Therefore, notwithstanding any other provision of this Article VI (other than the Regulatory Allocations), the Partners shall make such offsetting special allocations of Partnership income, gain, loss, or deduction so that, after such offsetting allocations are made, each Partner's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Partner would have had if the Regulatory Allocations were not part of the Agreement and all Partnership items were allocated pursuant to Section 6.1.

Section 6.4. Section 704(c) Allocations. In accordance with Section 704(c) of the Code and the Treasury Regulations thereunder, income, gain, loss, and deduction with respect to any property that is treated as having been contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Gross Asset Value (computed in accordance with the definition of Gross Asset Value in Schedule I); provided that such allocations shall be based upon the "traditional method" described in the Treasury Regulations under Section 704(c) of the Code. In the event that Gross Asset Value of any Partnership asset is adjusted pursuant to subparagraph (iv) of the definition of Gross Asset Value in Schedule I, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as under Section 704(c) of the Code and the Treasury Regulations thereunder; provided that such allocations shall be based upon the "traditional method" described in the Treasury Regulations under Section 704(c) of the Code.

Section 6.5. Distributions. Available Cash, if any, shall be distributed to the Partners pro rata in accordance with their respective Percentage Interests as set forth on Exhibit A attached hereto.

Section 6.6. Allocation of Income and Loss and Distributions in Respect of Interests Transferred.

(a) If any Interest is transferred, or is increased or decreased by reason of the admission of an Additional Limited Partner or otherwise, during any fiscal year of the Partnership, each item of net income, gain, loss, deduction, or credit of the Partnership for such fiscal year shall be assigned pro rata to each day in the particular period of such fiscal year to which such item is attributable (i.e., the day on or during which it is accrued or otherwise incurred), and the amount of each such item so assigned to any such day shall be allocated to the Partner based upon the Partner's respective Percentage Interest at the close of such day.

(b) Authorized distributions of Partnership assets in respect of an Interest shall be made only to the Partners who, according to the books and records of the Partnership, are the holders of record of the Interests in respect of which such distributions are made on the actual date of distribution. Neither the Partnership nor any Partner shall incur any liability for making distributions in accordance with the provisions of the preceding sentence, whether or not the Partnership or the Partner has knowledge or notice of any transfer or purported transfer of ownership of an Interest which has not met the requirements of Article VII. Notwithstanding any provision above to the contrary, gain or loss of the Partnership realized in connection with a sale or other disposition of any of the assets of the Partnership shall be allocated solely to the parties owning Interests as of the date such sale or other disposition occurs.

Section 6.7. Distribution of Sale or Refinancing Proceeds. After payment of the debts and liabilities of the partnership, all remaining proceeds from the sale or refinancing of the project (herein known as "Remaining Proceeds") shall be distributed as follows: The General Partner(s) in an aggregate amount of not less than five (5) percent of the Remaining Proceeds according to the terms of this Agreement.

## ARTICLE VII.

### Management and Control of Business

Section 7.1. Duties of General Partner. The General Partner shall have the exclusive management and control of the business of the Partnership and shall diligently and faithfully devote such time to the business of the Partnership as may be necessary to conduct it for the greatest advantage of the Partnership and shall render to the Partners, whenever reasonably requested by any of them, a just and faithful account of all dealings and transactions in relation to the business of the Partnership. The General Partner may delegate any of its duties under this Agreement to any related person, firm or corporation, provided that the General Partner shall continue to be primarily responsible for the performance of such duties. The General Partner or any of its affiliates may engage in other activities of the same nature and other business activities of any nature.

Section 7.2.  <u>Powers of General Partner</u>.  The General Partner shall have all necessary powers to carry out the purposes, business and objectives of the Partnership, including the right to enter into and carry out contracts of all kinds; to employ agents, employees, consultants and advisors on behalf of the Partnership; to lend or borrow money and to issue evidences of indebtedness; to bring and defend actions in law or at equity; to buy, own, manage, sell, lease, mortgage, pledge or otherwise acquire or dispose of Partnership property (including without limitation future capital contributions); and to determine the amount of Cash Flow from time to time as provided in <u>Section 6.2(b)(ii)</u>.  The General Partner may deal with any related person, firm or corporation on terms and conditions that would be available from an independent responsible third party that is willing to perform.  The General Partner is specifically empowered on behalf of the Partnership to acquire the Property and to borrow any funds necessary to pay the costs thereof.

Section 7.3.  <u>Reimbursement of Expenses</u>.  The General Partner shall be entitled to reimbursement from the Partnership of all expenses of the Partnership reasonably incurred and paid by it on behalf of the Partnership.

Section 7.4.  <u>Organizational Expenses</u>.  The Partnership shall pay all expenses incurred in the organization of the Partnership.

Section 7.5.  <u>Limitations on Limited Partner</u>.  The Limited Partner shall not participate in the management or control of the Partnership's business, nor shall they transact any business for the Partnership, nor shall the Limited Partner have the power to sign for or bind the Partnership.

Section 7.6.  <u>Limitation of Liability</u>.  The General Partner shall not be liable to the Limited Partner for any act or omission by it in good faith and in a manner reasonably believed by it to be within the scope of its authority.  The General Partner shall only be liable for actual fraud, willful misconduct, or gross negligence.  Any action or omission on advice of counsel for the Partnership shall be deemed as having been taken in good faith.

## ARTICLE VIII.

### Changes in General Partner

Section 8.1.  <u>Withdrawal of the General Partner</u>.  The General Partner may not withdraw from the Partnership or sell, assign or otherwise transfer its rights and duties hereunder.  The General Partner may assign its economic interest in the Partnership without the assignee assuming the duties of the General Partner.

Section 8.2. <u>Removal of a General Partner</u>. The General Partner may not be removed, except for willful or wanton disregard of its duties or gross negligence. Prior to undertaking any such removal of the General Partner, the Limited Partner shall provide written notice to the General Partner of any such default constituting cause for removal and shall allow the General Partner a period of 30 days after such notice to cure the default prior to effecting any removal of the General Partner. After any such removal, such General Partner interest shall become a Limited Partner interest herein. At any time after a removal of a General Partner, the removed General Partner shall have the right, upon delivery of a notice to such effect to the Partnership, to cause the Partnership to be dissolved as quickly as practicable, with its assets to be disposed of and its affairs wound up with the proceeds from the liquidation of the Partnership's assets to be distributed in the manner provided in <u>Section 6.3</u> hereof. Upon any removal of a General Partner, the Partnership must promptly pay to the removed General Partner all amounts then accrued and owing to the removed General Partner. A General Partner so removed will not be liable for any obligations of the Partnership after the effective date of its removal. If, after any such removal, there shall be no General Partner having a sufficient interest in the Partnership to cause the Partnership to continue to be treated as a partnership under the Code and as a limited partnership under the Act (as determined by independent legal counsel for the Partnership), all Partnership Interests shall be reduced proportionately in accordance with the then existing percentages for allocation of profits and losses so that the successor General Partner will have the requisite interest in the Partnership pursuant to the Code and the Act.

Section 8.3. <u>Continuation of Partnership</u>. In the event of the dissolution, liquidation, adjudication as bankrupt, or voluntary or involuntary withdrawal from the Partnership for any reason, including an inability to continue serving as a General Partner by law or pursuant to the terms of this Agreement as to any General Partner, the Partnership shall be dissolved in accordance with <u>Article X</u> hereof, unless the remaining Partners elect to continue the business of the Partnership within 90 days of the event of withdrawal.

## ARTICLE IX.

### Changes in Limited Partner

Section 9.1. <u>Death or Adjudication of a Limited Partner as Bankrupt or Incompetent</u>. The dissolution, liquidation, adjudication of a Limited Partner as a bankrupt, or voluntary or involuntary withdrawal from the Partnership shall dissolve the Partnership.

Section 9.2. <u>Transfer and Assignment of Limited Partnership Interest</u>. No Limited Partner shall assign, convey, sell, encumber or in any way alienate all or any part of its interest in the Partnership.

## ARTICLE X.

### Termination

The Partnership shall be dissolved, its assets shall be disposed of and its affairs wound up on the first to occur of the following:

 (a) a determination by the General Partner that the Partnership should be dissolved;

- 9 -

(b)     the General Partner shall dissolve, liquidate, or be adjudicated a bankrupt;

(c)     any Partner transfers its interest in the Partnership.

(d)     sale of all or substantially all of the assets of the Partnership; or

(e)     the expiration of the Partnership term.

The proceeds from the liquidation of the Partnership assets shall be distributed in the manner provided in Section 6.2(c).

## ARTICLE XI.

### General

Section 11.1. Counterparts. This Agreement may be signed by each party hereto upon a separate copy, in which event all such copies shall constitute a single counterpart of this Agreement.

Section 11.2. Indemnification of General Partner.

(a)     The Partnership shall indemnify the General Partner and any of its employees or agents, against any loss or threat of loss as a result of any claim or legal proceeding related to the performance or nonperformance of any act concerning the activities of the Partnership; provided, however, that the General Partner or the employee or agent of the Partnership against whom claim is made or the legal proceeding is directed, was not guilty of fraud, gross negligence or bad faith in such performance or nonperformance and provided, further, that this obligation to indemnify the General Partner shall apply to claims or legal proceedings against the General Partner by one or more Limited Partners.

(b)     It is the intent of this Section 11.2 to empower the Partnership to provide indemnification to the fullest extent possible as long as such indemnification is not prohibited by law or by the express terms of this Section 11.2. Therefore, indemnification may be provided irrespective of the nature of the legal or equitable theory upon which a claim is made, including but not limited to, whether or not the person to be indemnified is charged with negligence, breach of contract, breach of warranty, strict liability, or any violation of federal or state securities law. The provisions of this Section 11.2 shall not limit any other rights of indemnification to which the General Partner otherwise may be entitled by law.

(c)     The indemnification authorized by this Section 11.2 shall include payment of (i) reasonable attorneys' fees or other expenses incurred in settling any claim or threatened action or incurred in any finally adjudicated legal proceeding; and (ii) the removal of any liens affecting any property of the indemnitee. Indemnification shall be made from assets of the Partnership, but neither the General Partner nor any Limited Partner shall be personally liable to any indemnitee. This Section 11.2 shall inure to the benefit of the General Partner, its members, managers, employees and agents, the employees and agents of the Partnership, and their respective heirs, executors, administrators, successors and assigns.

Section 11.3. <u>Amendment</u>. This Agreement may be amended at any time by the General Partner by written notice to the Limited Partner; provided, however, that any such amendment shall not reduce the interest of any Partner in the profits and losses, Cash Flow or other distributions of the Partnership without obtaining the prior written consent of that Partner. Upon amendment of this Agreement, the Certificate of Limited Partnership shall also be amended, if necessary, to reflect such change.

Section 11.4. <u>Conflict with Indiana Revised Uniform Limited Partnership Act</u>. In the event of a conflict between this Agreement and the Act, it is the intention of the parties hereto that this Agreement shall prevail to the fullest extent permitted by law.

IN WITNESS WHEREOF, the undersigned Partners have executed this Agreement effective as of the 15th day of February, 2021.

GENERAL PARTNER

BRECKENRIDGE GP, LLC, an Indiana limited liability company

By:  TWG GP IV, LLC,
    an Indiana limited liability company,
    its sole member

_____
Louis A. Knoble, Manager

LIMITED PARTNER

TWG GP III, LLC, an Indiana limited liability company

_____
Louis A. Knoble, Manager

- 11 -

# Schedule I

## (Schedule of Definitions)

The terms used in this Agreement with their initial letters capitalized shall have, unless the context otherwise requires or unless otherwise expressly provided in this Agreement, the meanings specified in this Schedule I. Any term used but not defined in this Agreement shall have the meanings set forth in the Act. The singular shall include the plural, and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires. When used in this Agreement, the following terms shall have the meanings set forth below:

"Act" means the Indiana Revised Uniform Limited Partnership Act, as the same may be amended from time to time.

"Additional Limited Partner" means any individual or Entity admitted as a Limited Partner pursuant to Section 4.4.

"Adjusted Capital Account Deficit" means, with respect to any Partner, the deficit balance, if any, in such Partner's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:

(i) Credit to such Capital Account any amounts which such Partner is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulation Sections 1.704-2(g)(1) and 1.704-2(i)(5); and

(ii) Debit to such Capital Account the items described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5) and 1.704-1(b)(2)(ii)(d)(6).

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d) and shall be applied in a manner consistent with such intent.

"Agreement" means this Agreement of Limited Partnership of the Partnership, as originally executed and as amended from time to time.

"Available Cash" means all cash funds of the Partnership on hand from time to time (other than cash funds obtained as contributions to the capital of the Partnership by the Partners and cash funds obtained from loans to the Partnership) after payment or provision for (i) all operating expenses of the Partnership as of such time, (ii) all outstanding and unpaid current obligations of the Partnership as of such time, and (iii) a working capital reserve.

"Capital Account" means, with respect to any Partner, the capital account maintained with respect to such Partner consisting of (1) the amount of cash such Partner has contributed to the Partnership, plus (2) the fair market value of any property such Partner has contributed to the

Partnership net of liabilities assumed by the Partnership or to which such property is subject, plus (3) the amount of profits and tax-exempt income allocated to such Partner, less (4) the amount of losses allocated to such Partner, less (5) the amount of all cash distributed to such Partner, less (6) the fair market value of any property distributed to such Partner net of liabilities assumed by such Partner or to which such property is subject, less (7) such Partner's share of any other expenditures which are not deductible by the Partnership for federal income tax purposes or which are not allowable as additions to the basis of Partnership property, and (8) shall otherwise be subject to such other adjustments as may be required under the Code.

"Capital Account Profits" and "Capital Account Losses" means, for each fiscal year or other period, an amount equal to the Partnership's taxable income or loss for such year or period, determined in accordance with Section 703(a) of the Code (for this purpose, all items of income, gain loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss), with the following adjustments: (i) income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Capital Account Profits and Capital Account Losses shall be added to the Partnership taxable income or loss; (ii) any expenditures of the Partnership described in Section 705(a)(2)(B) of the Code or treated as Section 705(a)(2)(B) of the Code expenditures pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Capital Account Profits or Capital Account Losses shall be subtracted from the Partnership's taxable income or loss; (iii) in the event the Gross Asset Value of any Partnership asset is adjusted pursuant to subparagraph (ii) or (iii) of the definition of Gross Asset Value set forth in this Schedule I, the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Capital Account Profits and Capital Account Losses; (iv) any income, gain or loss attributable to the taxable disposition of any property shall be determined as if the adjusted basis of such property as of the date of its disposition was equal to the Gross Asset Value of such asset as of such date; (v) in lieu of the depreciation, amortization and other capital cost recovery deductions taken into account in computing taxable income or loss, there shall be taken into account Depreciation as defined in this Schedule I; (vi) the computation of all items of income, gain, loss and deduction shall be made without regard to any election under Section 754 of the Code which may be made by the Partnership (except to the extent required by Treasury Regulation Section 1.704-1(b)(2)(iv)(m)); and (vii) notwithstanding any other provision in any clause of this definition, any items that are specially allocated pursuant to Sections 6.2 and 6.3 of this Agreement shall not be taken into account in computing Capital Account Profits and Capital Account Losses.

"Capital Contribution" means the total value of cash and agreed fair market value of property contributed and agreed to be contributed to the Partnership by each Partner, as shown on Exhibit A, as the same may be amended from time to time. Any reference in this Agreement to the Capital Contribution of a current Partner shall include a Capital Contribution previously made by any prior Partner for the interest of such current Partner, reduced by any distribution to such prior Partner in return of "Capital Contribution" as contemplated in this Agreement. Additional Capital Contributions may be made by a Partner only with the consent of all other Partners.

"Cash Flow" means the net operating profits or losses of the Partnership, including as expenses all fees paid to the General Partner and its affiliates, (1) increased by depreciation and

other charges not requiring the expenditure of revenue from operations; and (2) reduced by (a) debt amortization; (b) reasonable reserves for working capital, contingencies, anticipated expenses, capital improvements and replacements; and (c) expenditures for capital improvements and replacements in excess of reserves. "Cash Flow" does not include the proceeds of the sale, refinancing, exchange, condemnation, destruction (including insurance proceeds in excess of amounts required to be applied to restore the insured property) or other disposition of all or any substantial part of the Partnership's property (each of such events the proceeds of which are not included in Cash Flow is herein referred to as a "Capital Transaction"). Cash Flow shall be determined separately for each fiscal year of the Partnership.

"Code" means the Internal Revenue Code of 1986, as amended. All references in this Agreement to sections of the Code shall include any corresponding provision or provisions of any succeeding law.

"Depreciation" means, for each fiscal year, an amount equal to the federal income tax depreciation, amortization or other cost recovery deduction allowable with respect to an asset for such fiscal year, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such fiscal year, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such fiscal year bears to such beginning adjusted tax basis; provided, however, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such fiscal year is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Partners.

"Entity" means any association, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, joint stock association, joint venture, firm, trust, business trust, cooperative, or foreign associations of like structure.

"General Partner" shall have the meaning set forth in the preamble to this Agreement.

"Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(i) The initial Gross Asset Value of any asset contributed by a Partner to the Partnership shall be the agreed gross fair market value of such asset, as determined by the contributing Partners;

(ii) The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective fair market values, as reasonably determined by the Partners, as of the following times: (A) the acquisition of additional interests by any new or existing Partner in exchange for more than a de minimis Capital Contribution; (B) the distribution by the Partnership to a Partner of more than a de minimis amount of property as consideration for interests; and (C) the liquidation of the Partnership within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g); provided, however, that adjustments pursuant to clauses (A) and (B) above shall be made only if the Partners reasonably determine that such adjustments are necessary or appropriate to reflect the

relative economic interests of the Partners in the Partnership;

(iii) The Gross Asset Value of any Partnership asset distributed to any Partner shall be adjusted to equal the gross fair market value of such asset on the date of distribution as reasonably determined by the Partners; and

(iv) The Gross Asset Values of Partnership assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(m); provided, however, that Gross Asset Values shall not be adjusted pursuant to this subparagraph (iv) to the extent that an adjustment pursuant to subparagraph (ii) is required in connection with a transaction that would otherwise result in an adjustment pursuant to this subparagraph (iv).

If the Gross Asset Value of an asset has been determined or adjusted pursuant to subparagraph (i), (ii) or (iv), such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of the allocations made pursuant to Article VI. For purposes of this definition of Gross Asset Value, a Capital Contribution or distribution shall be considered de minimis if its value is less than $1,000.

"Interest" means the entire ownership interest of a Partner in the Partnership at any particular time, including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement and under the Act, together with the obligations of such Partner to comply with all of the terms and provisions of this Agreement.

"Limited Partner" shall have the meaning set forth in the preamble to this Agreement.

"Nonrecourse Deductions" has the meaning set forth in Treasury Regulation Section 1.704-2(b)(1).

"Nonrecourse Liability" has the meaning set forth in Treasury Regulation Section 1.704-2(b)(3).

"Partner" or "Partners" refers to the parties to this Agreement as indicated on Exhibit A, and any Additional Partners.

"Partner Nonrecourse Debt" has the meaning set forth in Treasury Regulation Section 1.704-2(b)(4).

"Partner Nonrecourse Debt Minimum Gain" means an amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if such Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulation Section 1.704-2(i)(3).

"Partner Nonrecourse Deductions" has the meaning set forth in Treasury Regulation Sections 1.704-2(i)(1) and 1.704-2(i)(2).

"Partnership" means shall have the meaning set forth in the preamble to this Agreement.

"Partnership Minimum Gain" has the meaning set forth in Treasury Regulation Sections 1.704-2(b)(2) and 1.704-2(d).

"Percentage Interest" means the number of interests of a Partner in relation to the total number of outstanding interests of all Partners as set forth on Exhibit A.

Schedule I-5

**BRECKENRIDGE, LP**
**AGREEMENT OF LIMITED PARTNERSHIP**

**Exhibit A**

| Name and Address | Percentage Interest | Capital Contribution |
|---|---|---|
| 1. GENERAL PARTNER | | |
| BRECKENRIDGE GP, LLC<br>1301 E. Washington St., Ste. 100<br>Indianapolis, Indiana 46202 | 0.01% | $0.01 |
| 2. LIMITED PARTNER | | |
| TWG GP III, LLC<br>1301 E. Washington St., Ste. 100<br>Indianapolis, Indiana 46202 | 99.99% | $99.99 |
| TOTAL | 100.00% | $100.00 |